May I please the Court? My name is Paul Utrecht. I'm the attorney for appellants Thomas and Robert Field of the San Remo Hotel and TNR Investments. I'd like to begin the argument this morning with the issue of issue preclusion. I think that there's no question that the District Court got the issue of preclusion issue wrong for two separate reasons. The first is that under England, because this Court had previously ordered Pullman abstention, there's no issue preclusion when the case returns to Federal Court. I think that that has never been answered by the City. It has not been answered by the City. It's a meekie. It has not been answered by the District Court. Even when the statute or law being considered on Pullman abstention remand is four square identical to the Federal? I'm not saying that's the case here, but you're saying the rule is Pullman abstention, England reservation, you get to come back. Absolutely. I think that's the correct answer. Every time without exception. I think that's correct. There are no cases holding that after a Pullman abstention order that there's any form of preclusion on the parties when the case returns to Federal Court. I think that's what the U.S. Supreme Court held in Pullman. That is, in fact, a pretty inefficient thing, but it's a price that the U.S. Supreme Court held was necessary in order to enforce the principles of Federalism that underlie the Pullman abstention doctrine. And it is the case. Do you think that trumps full faith and credit? Yes, because the law... Well, that's judgment. It's full faith and credit, statutory, basically. Right. But it's an abstention doctrine that's designed to vindicate Federal constitutional rights. Those Federal constitutional rights trump the State law preclusion doctrines that are enforced under the full faith and credit clause. The best case, you think? I think England is the best case. England squarely holds that there is no issue preclusion, no claim preclusion on remand, and there are no cases holding to the contrary with respect to a Pullman abstention order. I think that there's no real question on that point. Go ahead. The second reason is that even if the Court concludes that I'm incorrect about the looks to the question under Dodd, which is what are the State law rules of preclusion with respect to the judgment at hand, and under the American Continental Insurance case, the California courts would provide no preclusive effect to the ruling under State law on the Federal claims that are now at issue in this case. American Continental involves the application of Arizona law to identical facts, to identical claim, to identical issue. Subsequently, the parties tried to relitigate that in California, and the Court said they were allowed to relitigate that in California because even if the Arizona court had concluded that Arizona law and California law were the same, the California courts were entitled and required to revisit those questions, decide whether the law was the same. So just as in the American Continental case, the Federal courts are supposed to revisit the Federal law questions to see whether the California Supreme Court was correct when it said that California and Federal law were the same with respect to takings. But what is your view on State law and Federal law on takings? The California Supreme Court seemed to say, well, takings law is a little broader in California, but I confess it's hard to see the difference. What do you think the – what is the difference, if any, between the Federal – applicable Federal law on takings and California law? The California Supreme Court says they're the same. The California Supreme Court is wrong because the California Supreme Court in this case applied a deferential level of scrutiny to the take – to the substantial advancement test here. And this Court in Chevron and Richardson said, following Yee, that heightened scrutiny is applied to both rent control and land-use regulations. And when the California Supreme Court decided to apply a lower level of scrutiny, a level of scrutiny as deferential as a rational basis scrutiny, they say they're not applying the same as a rational basis scrutiny, but in effect, the test that they applied was a rational basis level of scrutiny. And this Court and the U.S. Supreme Court has held that in takings law, you don't get rational basis level scrutiny. You get a higher level of scrutiny. You get both rough proportionality under Dolan and an essential nexus under Nolan. And we submit that the California Supreme Court simply gets that issue wrong, both under Chevron and Richardson and under Nolan and Dolan. Okay. Anything else? I think that – That's the major difference. I know you're asserting any other difference. Well, there's a whole host of differences. I mean, to give an example, which was the subject of the Hacienda case, the California courts apply substantive due process to rent control questions, and the Federal courts apply takings law to those questions. And this Court under Armendariz says if there's an argument about whether substantive due process or takings law applies to a particular claim, the takings law will govern and there is no substantive due process claim. This Court in Hacienda said, well, we don't necessarily need to reach that question because it's not quite certain how this issue is going to play out in the California courts, but I think – I believe I know how it's going to play out in the California courts. The California courts are not going to apply any kind of takings law to those questions. They're going to apply substantive due process. Not exactly the issue here today, but I think  The California courts are hostile to the doctrine. The California courts don't accept it. This Court, when we were here in 1996, said that it was not futile to go back to State court. We argued vehemently that it was futile to go back to State court. The State courts in California simply do not recognize the takings law that's been developed by the U.S. Supreme Court. I have a question that goes way back to sort of the underlying merits. There came a point in time when the – when San Francisco decided how many rooms were tourist and how many were residential, right? Yes, absolutely. And your – one of the contentions that has been made at some point in this lawsuit is that they did so inaccurately. That's correct. Had the City accurately determined in your client's mind how many rooms were residential and how many were tourist, would you have had a complaint? It depends, I think. If – it's not a matter of every single room being resident and every single room being tourist, is it? Well, I think the question is – I don't know, maybe I'm misunderstanding your question. Is the question would our clients have brought a complaint or is the question did our clients have a complaint to bring? Because obviously there's a – there's an economic issue involved in any litigation which is – But whatever happened, what flows from that is what we're here about today. My question is, doesn't the heart of your complaint relate to the City and County's determination as far back as 1981 as to which was residential and which was tourist? I don't believe that's correct. That is part of our claim, but that's not the heart of the claim. The heart of the claim is that the City imposed regulations on hotels that were historically operated by the day, week, or month and said those historical operations can no longer continue. In 1981, they put some limits on those hotels, not terribly stringent ones given the actual operation of the hotels, ones that did not significantly affect the operation of Plains Hotel. And in 1990, they said essentially all of your summer tourist use, which was what enabled them to continue their historical operations. Your client's position is that the City and County had no authority whatsoever even to engage in the classification? Well, the City clearly had the authority. Under the Takings Clause, the City is not prohibited from imposing such a regulation. The City's – the price the City has to pay for imposing a regulation that violates the Takings Clause is it has to pay damages or it has to invalidate the restriction. It does have authority. The Takings Clause presumes that there's authority, presumes that there's a public use being advanced by the regulation. And is it that the heart of your client's complaint, the City's determination? No. The application of the statute and the resulting determination? The determination is not the basis of the complaint. The basis of the complaint is the 1990 ordinance that took away their right to rent their rooms to tourists in the summertime, because under the original hotel ordinance, calling a room residential didn't make it residential, didn't require it to be used as a residential. But if, hypothetically, in 1981, if you'd convinced San Francisco that it was – that your determination and San Ramo's determination was appropriate, that is, during the summer months they were tourists and at other times during the year they were residential, that's the heart of the complaint, right? It's not the heart of the complaint. And if they'd knocked on the door saying, we're here to apply this ordinance and you had said, lookit, they're half tourist, half residential, whatever it is, and they'd say, fine, we've got no problem with you, fine, see ya, there'd be no problem, right? But the problem with that is that's not what's going on here. The City did not take a historical use. The City did not say, what have these rooms historically been used for? Instead, the City said, what were these rooms used for during a particular 32-day period in 1979? It then called those rooms residential. It then said, we called the room residential, and you can still rent it to tourists. You can rent it to tourists from May through September, and that was essentially what those rooms had been historically used for, which was they were used for tourists in the summertime, residents in the wintertime, and that use flipped back and forth as economic conditions permitted. In 1990, they said, we're not going to allow you to continue flipping back and forth between residential and tourist use. In 1990, the City came along and said, your summer tourist use is gone, or rather, 75% is gone, and 25% is gone unless you comply with our mandatory, our new effectively mandatory obligation to rent to residents in the wintertime. It's that event in 1990 that caused the harm. It is true, the precursor of that, the origination of that came from the 1981 determination. But the 1981 determination is not what harmed the San Remo Hotel. What harmed the San Remo Hotel was the change in those regulations that happened in 1990, and that's the basis of the claim. And your contention is you made a timely filing after that. Yes. Our contention is that under Franconia were timely, under Lavalde were timely. Under Lavalde, the holding in Lavalde, I think, is limited to the situation where you have a transfer of wealth that occurs upon adoption of the ordinance. We don't have that here. And it's also timely under the State law rules of equitable tolling, because those allow parties to pursue administrative remedies that are at least thought to be or arguably required before the litigation can commence. And I think a fair reading of the law as of 1990, as recognized by this court in the Southern Pacific case, it was unclear whether administrative relief, the first prong of the Williamson County test, was required in order to ripen a facial takings claim. And I think that our client's decision to pursue administrative remedies in order to ripen their claims was justified under Southern Pacific and the uncertainty of the law at the time and the doctrine of equitable tolling. I see that. Go ahead. Preserve some time? I would like to preserve the remaining time. Thank you. Thank you very much for your argument. Mr. Schwartz. Thank you, Your Honor. Good morning. Andrew Schwartz for the city. I'd like to start with the statute of limitations, if I may, because I think that because the claims are barred by the statute of limitations, you don't reach the issue of preclusion issue necessarily. I think, Judge Hawkins, your line of questions is exactly the city's point, that in 1981, the San Remo had a takings claim based on the 1981 ordinance. If you look at the San Remo case, I think your supervisor would tell you to say if they had one at all, that's when they had it. Exactly. Thank you, Your Honor. They had a claim. They have a claim now. The point is that the statute of limitations was one year and it ran by 1982. His argument is that that's not when the harm occurred. The harm occurred in 1990 when the city said, hey, you can't flip-flop anymore. If you look at pages one and two of the San Remo's opening brief, you will see their argument set forth. That argument is repeated throughout their brief. Their argument is that they did not create, that the San Remo Hotel did not create the problem of a lack of affordable housing in San Francisco and that they should not be required to mitigate the conversion of residential units to commercial use. They argued, their claim is that the hotel ordinance is impermissible. That it places a disproportionate burden on 500 hotel owners. A burden that should be borne by the public as a whole. The 1990 ordinance caused no change in their core argument, which was that they shouldn't be restricted in their conversion of residential units at all. It doesn't matter whether the replacement housing fee is 40% of the cost of replacement or 80%. Their core argument is the same, that this ordinance on its face is impermissible. Well sure, I mean the facial, it seems to me your argument is well taken on the facial aspect of it. But on the as-applied portion, I mean, if they had filed way back when, you would have come to us and said they haven't exhausted their administrative remedies, throw them out of court, wouldn't you? That's correct. And so isn't the way this plays out, and this is why I have difficulty with your as-applied argument, in some other case. But let's take the normal case. Within one year, a suit's filed. You come and say, hey, they haven't exhausted their administrative remedies. So they go back and they exhaust, it takes a few more years, and so they have the final denial. They come back here, you say statute of limitations. I mean, if we take your argument to its logical conclusion, I was trying to draw this out. They don't have a remedy ever, or no person would have a Federal remedy ever, would they? It's true, they do have a remedy, but you have to look at their argument. They're not arguing that the fee was excessive. And that's exactly the point that the Court made in the, that this Court made in the LaVald case, where the Court said the size of the premium, this was the premium obtained by the tenant, when under the court said, the size of the premium will change. But the plaintiff does not focus on the premium. Rather, it is the existence of the transfer that forms the basis of the claim. And that's precisely what the San Remo is arguing here. They are not challenging the amount of the fee. They're not challenging 40 percent versus 80 percent. They're challenging the basic policy of the ordinance. And that's why they don't have an as-applied claim in reality. It's really a facial challenge, because it's a challenge to the basic policy of the ordinance, that they were disproportionately burdened with this public program. And they were – if they were disproportionately burdened in 1990, they were also disproportionately burdened in 1981. That is their argument. If they were making an argument that the economic impact of the 1990 ordinance was such that it affected a taking, we'd have a different case. But we do not have that argument. Under your theory, all facial claims were terminated in 1982. And if you were to make an as-applied challenge and follow the Special Use Permit Administrative Procedure and challenge it constitutionally all through that without making a Federal claim, at the end of it, if it took more than a year, that claim would also be barred. Right? It depends on the argument. If the argument is to the basic policy that you can't – you can't restrict residential hotels and require them to be closed. I don't mean to interrupt, but I want to get to the end of – and I apologize for doing that, but – so if – I guess I – this leaves – well, it leaves me with an uncomfortable feeling, which I hope you would address. If one is challenging the basic policy through the normal administrative process, I assume that at the end of that process, you're saying that if they don't articulate it specifically, then it's – the time has been limited. Your time is run after a year. And if you file a challenge in court within a year, your argument would be that they have an exhausted administrative procedures. Right? If you're making a facial challenge to an ordinance, the statute of limitations run one year from enactment. If your challenge is a facial challenge, then, yes, it doesn't matter what administrative procedures you invoke. If they – if the administrative procedures don't constitute a challenge to the basic policy of the ordinance, you're out of court. Now, in this case – in this case, there was no administrative challenge to the HCO, to the hotel ordinance. So when you're talking about the hotel ordinance as applied, as a taking as applied, there was no administrative challenge. So even if the 1990 ordinance is the – is the accrual date of their as applied challenge, that – the statute ran because their administrative challenge was for an exemption under the planning code. They challenged the board of appeals decision that they needed a conditional use permit under the planning code in order to convert. Different statute. They did not challenge the hotel ordinance in the administrative process at any time. They didn't challenge it – and they certainly didn't challenge the hotel ordinance or the planning code as unconstitutional. So when they brought their case in 1993, they didn't allege that the economic impact – this fee of $567,000 is too high. They didn't say, we brought an administrative challenge that it was too high and it should have been lower. No. Their claim has always been that – You have no right to exact it at all. Exactly. I'd like to address the issue preclusion issue, if I might. Doesn't it – wouldn't you have a little hard time explaining this to a high school civics class? The notion of a fateful versus – You come to Federal court, and the Federal court says, Pullman, okay, you're back to State court, you make your England reservation, you try your State claim, having specifically reserved your Federal claim, you come back to Federal court, and the Federal court says, aha, you're precluded. You've already tried this. I take it, counsel, what you're arguing is that if they're making a true as-applied challenge, it's not barred by the statute of limitations, correct? It is, Your Honor. Even if it's a true as-applied? Because the 19 – they waited more than a year after the 1990 statute was amended. Let's pretend it really is an as-applied challenge. Didn't we say on the prior iteration that there was Pullman abstention? It was actually too early. It wasn't ripe. Didn't we say it wasn't ripe, actually? Yes. Isn't that what we said? Yes. That is correct. But we said the as-applied challenge is not yet ripe, correct? Yes. And it won't be ripe until you go back and try to get compensation. That's correct. Correct? And they did. And they did. Yes. The city made – And you're saying that even though we said it wasn't ripe, still the statute ran against it. That's your position? Yes. Is that correct? Yes. The city was not arguing at that time that the as-applied challenge was really a facial challenge. And there are two reasons for that. The first – You're not listening to my question. I say if it truly is an as-applied challenge and not a facial challenge masquerading as an as-applied challenge. If it really, really, really is, honestly, in the universe, an as-applied challenge. Yes. You're saying the statute still ran, is that correct? No, I'm not, Your Honor. That's what I'm asking you. I'm sorry. I said if it really is as-applied, then the statute didn't run. That's correct. So that's the tipping point, right? That's correct. Is it truly as-applied or isn't it? So if they came in and said, you know, you applied it to – you said we had 60 residentials and on any reasonable, rational review, we only had 20 residential. And when you – when we got to the Planning Commission and they said, uh-uh, you had 60, that applied the ordinance in a way to us that even if it's good on its face, it was irrationally applied and unreasonably applied. And that's what we're talking about. If they said that. Yes. If they said that? If they said that, it would be okay, right?  It would be unripe and it would have to go – And now it's – the statute hasn't barred it, right? Correct. So the question is whether they said that. Correct. Gotcha. That's right. In – in the – after the State court litigation – well, let me back up. In the Ninth Circuit, in this court, in San Remo 1, we argued that an as-applied taking challenge is unripe because it's simple, it's certain, we win. And we did win on that issue when the Ninth Circuit, this court, dismissed the claim and sent it to State court. After the State court litigation, we are now back in this court and what has emerged is a more developed claim where it's become clear that their as-applied taking challenge to the HCO, the hotel ordinance, is really a facial challenge because all the – their claim in their briefs, in their pleadings, is just that this ordinance is impermissible because it shifts the burden of providing affordable housing. Did the California Supreme Court treat the whole thing as a facial attack? No, the California Supreme Court analyzed the HCO and the planning code both on their face and as-applied. That's what I thought. So they didn't think that the statute of limitations was barring the as-applied challenge at that point, correct? The statute of limitations is different in State court than Federal court. I understand that. Yes. The statute of limitations in the – for the Fifth Amendment claim is one year. The statute of limitations in California is longer. Is? Is longer. How long? It's unclear. It's three or five years. Well, let's make it five years from 1981. Then the statute would have barred it? Yes, Your Honor, but they were not arguing that the city's certificate of use was inaccurate. That was not their claim. Their claim was that the ordinance was impermissible on its face. You told me in the California Supreme Court they made an as-applied challenge also. Yes, they did. Yes, Your Honor. But the same one on its face? They made – the San Remo alleged that the HCO was a taking on its face and as-applied. Yes. Yes. Okay. In the – the Dodd case is controlling here. In the Dodd case, yes, Your Honor, the Dodd case sets forth the roadmap for issue preclusion here. And the Dodd case says that if the law of the State and the law – and the Federal law is coextensive, it's the same body of law, and it certainly is, the commercial builder's case from this Court says when a mitigation fee that is legislatively imposed on a broad class of property owners gets a deferential test under the substantially advanced taking standard, a deferential test, that is exactly the same test that the California Supreme Court supplied. The Dodd case very clearly holds that while there may not be claim preclusion, if the issue preclusion, and we have the very same facts in this case, it was the identical facts, identical law, the identical parties, there was a final judgment. These taking claims were fully litigated in the State court. The San Remo was permitted to make every argument that it thought was relevant. The California Supreme Court analyzed the claim under both State and Federal cases. All of the law that we're applying here under the substantially advanced test originates with the Agins case, the Penn Central case, the Nolan and Dolan cases, and the Delmonte Dunes cases from the United States Supreme Court. And that is the law that the California Supreme Court applied, and that is the same law that's in effect here. The standard of review of an ordinance that is broadly applicable, that imposes a mitigation fee, is the deferential test. It's the same in both courts. Thank you. Roberts. Good timing. Thank you for your argument. Rebuttal. I think that on the statute of limitations question, I think there's two issues, and the first is whether this Court can recharacterize our claims as facial rather than as applied. I think that it's clear that under Lavalde and under the way the complaint was actually alleged that we've alleged both an as-applied and a facial claim. The statute of limitations questions are different for the two claims. I think with respect to the as-applied claims under Lavalde and Hacienda, those claims are clearly timely. With respect to the nature of the claim, I think that there's some misunderstanding. We have always challenged the number of rooms that were designated as residential in litigation. Our complaint at ER 118 alleges that there were only ten rooms in residential use when the city's designation occurred. Is that the as-applied claim? That is not the as-applied claim. That is part of the as-applied claim. That is part of the as-applied claim. Absolutely, because the facial claim governs how this law applies to all residential hotels. Okay. What's the rest of the as-applied claim? The rest of the as-applied claim is that the effect of the ordinance is to preclude them from continuing their historical use and to deprive – and that the ordinance as applied to them, as applied to this hotel, does not substantially advance the legitimate government interest, that the test for exactions requires that there be a connection, an essential nexus between the problem to be solved and the exaction that's imposed. That sounds a lot like facial again. It does, but the case is – Your as-applied claim is that it – your as-applied claim is that this ordinance would preclude the historical use, right? Under Nolan and Dolan, the language that's used is, is there a connection between the exaction, i.e., the – Am I talking about the connection now? You said first to me that it would preclude the historical use of the property, correct? That's correct. That's relevant under the Penn Central test, which is one of the claims that we've I understand the relevance. Your point is when the ordinance was passed, it precluded – that precluded the historical use of the property, correct? Yes. That sounds very facial. I understand the number of rooms argument, but what you just said sounds very facial. I think that the – what the Court does is it looks at how, as-applied claim, it looks at how the ordinance actually affects the particular property. You can have both an as-applied claim and a facial claim that track each other and that are based on the same factual issues. And so, for example, we facially challenge the ordinance, but our as-applied claim gets to the – both claims get to both the essential nexus and rough proportionality tests. In other words, when the city says in order to change this use, you need to pay the between the fee and the proposed new use. There has to be some connection there. And those questions are going to be the same whether it's facial or as-applied. I see I've used up all my time. And a little more. Thank you very much. Thank both counsel for their arguments. They're quite helpful. The case just argued will be submitted for decision, and the Court will stand in recess for the day. Thank you.
judges: Fernandez, Hawkins, Thomas